UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

TRAIS FERNANDEZ HAIRE,

        Plaintiff,

        v.                                      Case No. 23-C-1073

WARDEN RANDALL HEPP,

        Defendant.

## DECISION AND ORDER

Plaintiff Trais Fernandez Haire, who is representing himself, is proceeding against Defendant Randall Hepp under the Eighth Amendment, as well as the Safe Drinking Water Act, in connection with allegations that the Waupun Correctional Institution has failed to supply clean drinking water since 2021. Dkt. Nos. 10 & 11. On July 18, 2024, Defendant filed a motion for summary judgment. Dkt. No. 36. Because the undisputed facts show that Waupun's water was deemed safe to drink at all times by the Wisconsin Department of Natural Resources, the Court will grant the motion for summary judgment and dismiss this case.

### UNDISPUTED FACTS[1]

At the relevant time, Plaintiff was an inmate at the Waupun Correctional Institution, where Defendant Hepp was Warden from May 2020 to June 2024. Dkt. No. 38, ¶¶1-3. Waupun, Wisconsin has a "community water system" that is used by several local correctional institutions,

---

[1] The Court accepts all of Defendant's Proposed Findings of Fact (Dkt. No. 38) as true because Plaintiff did not respond to them, as required by Civil Local Rule 56(b)(2). Toward that end, on July 26, 2024, the Court specifically warned Plaintiff that if he did not respond to each proposed, the Court would assume that he did not dispute the proposed fact and would accept the proposed fact as true. Dkt. No. 42. Yet Plaintiff still did not respond. Therefore, the facts are deemed true for purposes of this motion.

Badger State Enterprises/Creamery, the Central Warehouse, and the residents of Waupun. *Id*., ¶¶4-5. The Central Generating Plant Water Utility (CGP) supplies water to the Waupun Correctional Institution through Well #3 and Well #4. *Id*., ¶¶4 & 6.

State and federal laws require "routine" testing of community water systems, a process that is monitored by the Wisconsin Department of Natural Resources (DNR). *Id*., ¶¶7-8. In May 2020, when Warden Hepp started his position at the institution, he was notified by staff that the January 2020 combined radium testing of Well #4 exceeded the maximum contaminant level (MCL) of 5.0 pCi/L. *Id*., ¶20. The well tested at 5.92 pCi/L. Dkt. No. 41-1 at 4. Radium is a naturally occurring element in water and the amount of radium in a water supply fluctuates due to natural conditions. Dkt. No. 38, ¶14. At the time, the DNR advised Warden Hepp that there were no immediate effects from naturally occurring radium in the drinking water, and therefore no alternative drinking source was required. *Id*., ¶22. But certain "corrective action" should be taken to return to compliance by December 31, 2024. *Id*., ¶¶10-13. Specifically, the DNR's consent order directed the institution to:

    a. provide public notification that the combined radium in Well #4 exceeded the MCL (5.0 pCi/L) and outline the potential health effects of exposure each quarter until compliance is achieved;

    b. take corrective action to reduce the combined radium in the water supply and return to compliance as soon as practical by using one of the following methods: permanently removing Well #4 from service, reconstructing the well, constructing a new well, blending with water from wells with lower radium levels, or installing and operating treatment consistent with Wisconsin administrative codes;

    c. submit plans and specifications for the selected treatment method by November 30, 2021; and

    d. return to compliance by no later than December 31, 2024.

Dkt. No.41-1 at 5-6.

Warden Hepp directed the Correctional Management Service Directors—Linda Meisner (not a defendant), Jeffery Berres (not a defendant), and Tracey Aide (not a defendant)—to comply with the DNR's requirements and to keep him apprised of their efforts to resolve the water situation. Dkt. No. 38, ¶23. Meisner, Berres, and Aide's took necessary action and were successful well before the compliance deadline. *Id.*, ¶¶14-18. DNR samples collected in October 2020, February 2021, October 2021, and March 2022 all showed appropriate levels of combined radium below the MCL. *Id.*, ¶14. As a result, on September 6, 2023, Waupun received notification that it was no longer required to post a public notification. *Id.*, ¶15. Additionally, the most recent water samples collected from the institution's two wells on May 15, 2024 also tested below the MCL. *Id.*, ¶¶16-17. Well #3 had an MCL of 4.29 pCi/L and Well #4 had an MCL of 4.43 pCi/L. *See* Dkt. No. 41-3 & 41-4. Warden Hepp explains that he did not provide bottled water to the inmates or institution staff at any point in time because the DNR advised that there was no need to provide an alternative water supply. Dkt. No. 38, ¶19. Warden Hepp states that he is not a water quality expert, so he relied on and followed the advice he received from the DNR. *Id.*, ¶¶24 & 26.

**SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate when the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. All reasonable inferences are construed in favor of the nonmoving party. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth

3

specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id*. Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012) (internal quotations omitted).

## ANALYSIS

To survive summary judgment on an Eight Amendment conditions of confinement claim, Plaintiff must put forth evidence from which a reasonable jury could conclude that: (1) he suffered conditions that deprived him of the minimal civilized measure of life's necessities; and (2) the defendant acted with deliberate indifference with respect to the conditions. *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (quoting *Farmer v. Brennan*, 511 U.S. 832, 834 (1994)). "Poisoning the prison water supply or deliberately inducing cancer in a prisoner" would deprive an inmate of the minimal civilized measure of life's necessities. *Carroll v. DeTella,* 255 F.3d 470, 472–73 (7th Cir. 2001). "But failing to provide a maximally safe environment, one completely free from pollution or safety hazards, is not." *Id*. Indeed, "[m]any Americans live under conditions of exposure to various contaminants" and "the Eighth Amendment does not require prisons to provide prisoners with more salubrious air, healthier food, or cleaner water than are enjoyed by substantial numbers of free Americans." *Id*. If the environmental authorities do not believe a certain corrective action is necessary, "prison officials cannot be faulted for not thinking it necessary for them to do anything either." *Id*. "They can defer to the superior expertise of those authorities." *Id*.

The undisputed evidence shows that the drinking water at the institution was safe for human consumption at all times while Plaintiff was incarcerated. While the combined radium in the water supplied to the institution through Well #4 was elevated in January 2020, the DNR advised Warden Hepp that there were no immediate effects from naturally occurring radium in the drinking water, and no alternative drinking source was required. Plaintiff therefore was not denied safe drinking water at any time while he was incarcerated; and Warden Hepp properly deferred to the expertise of the DNR when determining that bottled water was not necessary at the institution. Further, once Warden Hepp was notified about the elevated combined radium level in the water in May 2020, he acted diligently and reasonably to comply with the DNR's corrective actions. He delegated the task of complying with the DNR's requirements to the appropriate individuals at the institution—the Correctional Management Service Directors—and he ensured that their efforts were successful within a reasonable amount of time, and well *before* the DNR's compliance date of December 31, 2024. *Gevas v. Mitchell*, 492 F. App'x 654, 660 (7th Cir. 2012) (noting that "prison directors and wardens are entitled to relegate to the prison's [ ] staff" matters that do not require their expertise as a prison administrator.); *see Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009) ( The division of labor is important not only to bureaucratic organization but also to efficient performance of tasks; people who stay within their roles can get more work done, more effectively . . .). Indeed, by October 2020, the level of combined radium was below the MCL again, and by September 6, 2023, the institution was no longer required to post a public notification at all. Warden Hepp did his job and ensured that the institution complied with the DNR's requirements more than a year before the compliance date. Based on these undisputed facts, no reasonable jury could conclude that Plaintiff was deprived of the minimal civilized measure of

life's necessities or that Warden Hepp was deliberately indifferent towards the water quality issue identified by the DNR.

In response, Plaintiff maintains—without any evidence—that the "drinking water is contaminated with toxic from chemicals, radium, lead, bacteria and rust." Dkt. No. 45 at 3. He states that, "Waupun is a death camp, just like the Holocaust" and "the bottom line is the toxic water is giving inmates cancer and killing prisoners." *Id*. at 7 & 14. Plaintiff states that he "will meet his burden by having the water tested." *Id*. However, summary judgment is the "put up or shut up" moment in the lawsuit. *See Siegel v. Shell Oil Co.,* 612 F.3d 932, 937 (7th Cir. 2010). Plaintiff's lack of evidence at this juncture of the case dooms his lawsuit. Plaintiff attempts to argue that his medical issues, including chronic stomach and abdominal pain, is evidence of the contaminated water. But Plaintiff is neither a medical expert nor a water quality expert who is competent to provide such evidence; and his mere speculation is not enough. *See e.g. Smith v. Whitman*, No. 18-CV-669-JDP, 2023 WL 3750528, at *4 (W.D. Wis. June 1, 2023) ("The bottom line here is that [Plaintiff] assumes that his health problems were caused by contaminants in the [institution's] water. But his mere speculation that the water caused his injuries is not enough to create a disputed issue of material fact on that issue."). The remainder of Plaintiff's arguments involve requests for injunctive relief—re-testing of the water at the institution, employment of a water expert at the institution, and directing the attorney general to separately look into the water supply issues and hold individuals "accountable." But Plaintiff's failure to prove that the water is unsafe for drinking means that he is not entitled to injunctive relief. In sum, the DNR deemed the water in Waupun safe for public consumption despite the elevated combined radium level in January 2020, and Plaintiff is not entitled to cleaner water than that enjoyed by other free citizens

6

Case 1:23-cv-01073-WCG   Filed 12/13/24   Page 6 of 8   Document 47

in Waupun. Therefore, the Court will grant Defendant's motion for summary judgment and dismiss this case.[2]

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant's motion for summary judgment (Dkt. No. 36) is **GRANTED**; and this case is **DISMISSED**. The Clerk is directed to enter judgment accordingly.

Dated at Green Bay, Wisconsin this 13th day of December, 2024.

s/ William C. Griesbach
William C. Griesbach
United States District Judge

---

[2] The Court notes that Plaintiff also requested to proceed under the Safe Drinking Water Act (in addition to the Eighth Amendment) and was allowed to do so through the screening order. Dkt. Nos. 10 & 11. However, neither party provided proposed facts, analysis, or argument regarding the Safe Drinking Water Act claim; and Plaintiff appears to have abandoned that claim. *See* Dkt. Nos. 36-46. The Court will not *sua sponte* propose facts and analyze a claim that neither party wished to address, argue, or pursue. *See e.g., Fair Hous. Ctr. of Cent. Indiana, Inc. v. Rainbow Realty Grp., Inc.,* No. 117CV01782JMSTAB, 2022 WL 6158365, at *2 (S.D. Ind. Oct. 7, 2022) (noting that "[t]he Court's reliance on party presentation and the concept of waiver both serve to make the Court's consideration of pending motions more focused and efficient." Therefore, the Court will dismiss that claim based on Plaintiff's failure to prosecute it.

This order and the judgment to follow are final. Plaintiff may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **30 days** of the entry of judgment. *See* Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If Plaintiff appeals, he will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome. If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this Court. *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. §1915(g). If Plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serious physical injury. *Id.*

Under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment. The Court cannot extend these deadlines. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.